Good morning, Your Honors. Good morning. Robert Besser for Appellant. As you noted, there are two matters here. I'd like to briefly talk about the first, which I consider the main appeal from the summary judgment motion. We briefed extensively the idea that we believe that the Bridgeport case from the Sixth Circuit should be controlling and that this circuit should adopt it. Well, it's not controlling. It's a question of whether we decide we wish to adopt it or not. I meant when I said should be controlling, I meant to finish the sentence with should be if this court, in other words, this court should adopt the reasoning of the Sixth Circuit in Bridgeport. I believe very strongly in that reasoning. Is there any other area of copyright law that you can point to where there is not a de minimis exception? In other words, if there's one sentence in a 400-page novel that finds its way into a 700-page novel, there's a de minimis exception that applies. There is a de minimis exception. Is there anything else that you're aware of besides what you're arguing for here on sound sampling where there is no such exception? I am not aware of any other where there is no such exception. I would also argue here that the de minimis was misapplied and that there was more than a de minimis sample taken. But starting with the first point as to whether or not Bridgeport is applicable, no. In Bridgeport, it says in its opinion that we are establishing a bright line and we are establishing a new rule. Is that consistent with Ninth Circuit precedent under copyright principles? I believe it's consistent with Newton v. Diamond, which is what the trial court relied on and which the defendants rely on. In Newton v. Diamond, there were two samples. There was a sample of the sound recording and of the composition. The Beastie Boys who sampled it went out and did the correct thing. They licensed the sound recording sample because they wanted the way it was performed. That's the essence of a sound recording. It's the way it is performed. Even though it was only three notes in Newton v. Diamond, the way that flute sound came out was something that the Beastie Boys recorded, so they licensed it. Then the court said you did not have to license the composition because the piece of the composition you were taking was only three notes. It appeared only at the beginning of the song and if you remove those three notes from the song, it wouldn't make any difference. It was the performance in that case that was the essence. Well, any time you have a sound recording which uses original musicians as our sound recording did, it seems to me that the performance is the essence. Now our piece, what's been called the horn part or a horn hit, appeared more than once in our song, so the taking was more substantial in that sense. What the defense argues is that it's only a second or a piece of a second that appears, but because it was a live performance in our song, it appeared a number of times through the song. Then when you sample it, you just pick out the best one you want and you pick that little piece electronically and you sample it. So I would argue that even under de minimis, we should have at least gotten a jury trial, but pushing that aside. Let me ask, so I can be sure. You're really arguing two things. First of all, you're arguing that it isn't de minimis. That's what you're arguing, right? I'm arguing first that it doesn't matter and secondly, you're right. I would put the arguments differently. You're arguing that it isn't de minimis. You just said, well, here and it's over here. I would argue both. Yes, you are. Then the other one is, okay, but even if it is de minimis, we should adopt the decision that it doesn't matter whether it's de minimis. Anything zero, just .1 is enough. Right. This case is a precise example of that reason because what Mr. Pettigone testified to, what the defendant testified to in his deposition and it's in the record, is the reason he didn't use live players was he didn't have a budget for it. But counsel, there may be other claims that can be brought, but isn't the copyright claim dependent on the utilization of something original rather than the utilization of someone's time and labor? There may be other claims that say you took my time and labor without compensating me, but that's not necessarily a copyright claim. Right. But the originality issue never got as far as a trial. I think that there was been I understand that, but what I'm suggesting to you is that simply saying I wanted to save money doesn't establish a copyright violation. There's two reasons that Bridgeport cites. One is I want to save the money and two is it's important to my composition to get that particular performance in my composition. That's why I take it. Otherwise I would go out and get other horn players or something else to duplicate it, which was their right. And I think it's very important to emphasize that it is their right to go out and imitate the sound recording. We're not saying that it's not. Then we would have the issue simply of the composition, whether they should have licensed it. But where you have horn players playing a part, I think by definition it's original. You will never get the same. If you pull together three or four horn players and say play this part, it'll never be the same. A single rendition of Middle C under your definition would be copyright infringement if you accepted Bridgeport, if you used it as a sampling. But why isn't that some other wrong and not copyright infringement? There is, I don't know what other wrong it would be other than... Well, you own a copyright in that particular recording. Exactly. It's a taking, in Bridgeport's words, it's a taking of a physical more than an intellectual thing. But nonetheless, the one thing that Congress decided to do, effective not until 1972, I was to grant the owner of sound recordings a copyright in that physical performance on the sound recording. It's not necessarily the composition. It's the physical way it's performed and reduced to an electronic form, typically in a series of tapes, multi-track tapes with each piece on a different channel of the multi-track tape. But I do maintain that that is by definition original. You brought in players to play a particular part and they played it and they used it throughout the song. And they played it more than once throughout the song. So it's an important part of the song. And I think the district court, at some point in her opinion, indicated that it wasn't important to vote. But that's not the issue. The issue was, was it an important taking from our song? How have other courts dealt with Bridgeport music? Well, some of the lower courts have, and we've cited that in our brief, have said, well, it's cited Bridgeport as an example of de minimis can be upheld. But there was one court in Florida, a district court in Florida, which is the Saragama case that comes up, that criticized Bridgeport and did not want to follow it. That case went up on appeal and the appellate court in the 11th Circuit decided the case on a different grounds, as had the trial court, really. The trial court had said, well, you don't have standing to bring a copyright infringement because you only had a two-year license. Is Bridgeport the only case that deals with sampling of sound recordings? The only one I know of, Your Honor. I haven't been on the separate court level. Well, Newton did, too, of course. The Newton case from this court also dealt with sampling. But it's sampling of the composition. But I'm talking about the sound recording. And that I consider a very, very important distinction, because I think the Beastie Boys went out and did the right thing. I will say as a copyright lawyer that any time a musician walks into your office and says, I want to take a piece of a sound recording, you say go license it. And that's basically what Bridgeport said, too. If you want to use it, license it. If you don't, go ahead and get your own players and recreate it any way you want and imitate it. But if you want that sound that somebody put down and has the copyright in, then license it. Now, I would also like to then briefly talk about the attorneys' fees element, too, of the case. Obviously, that's the second issue here. And the district court, in awarding it, most district courts applied, but seemed to primarily rely on the reasonableness of whether or not the claim should have been brought. And I think there, let's see, it's actually in, I have the opinion right in front of me, I think. Well, she said the lawsuit was objectively unreasonable, if I recall correctly. Right. She said it was objectively unreasonable because prior to the litigation, plaintiff was on notice as to potentially meritorious defenses, including Mr. Pennywode's ownership interest in Lovebreak. There was nothing in the record to support that any issue had ever been raised as to ownership prior to the filing of the litigation. It simply wasn't there. It simply wasn't done. I submitted a declaration describing the settlement negotiations that went on beforehand, and the defense had denied sampling, and it said even if there were sampling, it wouldn't be significant, but there certainly was no issue raised at that point. They put us on notice as to the de minimis defense, but given that the highest authority available, the only circuit court opinion available, or appellate court opinion available, was Bridgeport, I don't think it's unreasonable to rely on Bridgeport. It had been decided in 2005. It frankly was my understanding that it was controlling, that if you wanted to use a sound recording, you should have licensed it. And I don't think it's unreasonable to take the position that Bridgeport should be controlling. I see you're down to about three minutes, and I want to make sure you have some time for rebuttal. I will reserve. Thank you for pointing that out to me. Good morning. Good morning, Your Honors. Alexander Kaplan of Proskauer Rose for Appellees Madonna and the Warner Publishing Company and the Warner Record Companies. I'm going to be arguing the summary judgment appeal. My colleague, Richard Bush, who is from a separate firm and represents defendant Shep Pettibone and his music publishing company, is going to argue the attorney's fees. I'd like to reserve five minutes for Mr. Bush to argue. Okay. I'll stop you when you're down at five minutes. Okay. Thank you, Your Honor. I would like to start with the court's indulgence and ask my colleague to just quickly play the music that is at issue here today, and it will literally only take a fraction of a second, Your Honor. Turn that up a little bit, please. That's it, Your Honor. That is the entire infringement case. Why do you get it for free? Why do we get it for free, Your Honor? Why don't you have to pay these people who performed it? Well, let me start by saying, Your Honor, that our side absolutely denies that there was any sampling here. That's what the trial's for. You're right, Your Honor. The reason is because, A, it is unoriginal, both the composition, a single chord played for a fraction of a second. The recording is also unoriginal. But even if it were original, the taking was de minimis. It's infinitesimal. It doesn't get any smaller than a fraction of a second. Bridgeport says fine, then you pay a small license for it. Agreed, Your Honor, but Bridgeport is incorrect for a number of reasons, which I will get to. But first and foremost, it is directly contravened by this Court's holding in Newton v. Diamond, which was— Newton, the sound recording, was licensed, wasn't it? Correct, Your Honor, but what Newton says is that—let me turn to that, Your Honor. Newton was a sampling case. It dealt with the composition because, in that case, as my friend Mr. Besser said, the sound recording had been licensed. But here's what this Court said in considering the de minimis inquiry, that it reflects the principle that the substantiality requirement applies throughout the law of copyright, including cases of music sampling, even when there is a high degree of similarity. And the Court recognized in Newton that in a sampling case, the similarity is going to be identical. Well, that's because in a composition case, you're dealing with substantial similarity. You're not dealing with that in a sound recording case. You're dealing with an actual carbon copy. Well, the substantial similarity analysis, Your Honor, does not go out the window in a sound recording case. If it's admitted or if the jury finds it, then that fragment is going to be considered substantially similar. But in terms of applying the de minimis analysis and the substantial similarity analysis, you have to look at the entire works at issue. And in this case, there's nothing other than that fraction of a second of the horn hit that VMG alleges is substantially similar to Vogue. Well, they say it was replicated several times. That's what they say. Well, so that is also incorrect. In a different key, but it's the same court. Okay. Judge Graber, you're right that it was in a different key. It was transposed. Right, that it was in a different key, and that's important. But in terms of the sound recording, and this is true for any sampling claim, and again, we deny sampling here, but the allegation in this case is that at the 3 minute and 35 second point in the Lovebreak recording, which is the plaintiff's recording, which by the way, actually Shet Pettybone is at minimum a co-owner of, but I'll leave that to the side for a moment. It's that fraction of a second at 3.35, which was copied into Vogue according to their allegations. Not any of the other recordings of the horn hits. Now, when we're talking about the composition side and the de minimis argument, there you would consider the other horn hits. But when we're talking about the recording and sampling, the only thing sampled was that one horn hit that they specifically identified. So here's my question for you. The Supreme Court in Feist tried to distinguish, as I understand it, between the protection of the ideas in copyright or the originality and the protection of the sweat of the brow, and it said copyright is not about that. It's not about work. It's about protecting originality. What other kinds of claims could someone bring when they have been sampled using the sweat of their brow if it's not protectable by copyright? Your Honor, I'm not sure there are other claims they could bring. I mean, again, Are there tort claims for wrongful appropriation of property or things of that sort? Well, I think not if it would be preempted by the Copyright Act, Your Honor. Now, we have to talk about post-1972 sound recordings because that's what is protected by the Copyright Act. And you are correct that in Feist the Court said we're not going to talk about the sweat of the brow. We're talking about originality and creativity. And what Feist was really saying was that you may have an entire work that's copyrightable, but not every single element in that work is copyrightable. And one chord in the entire Love Break recording is not copyrightable. That's not to say that Love Break as a whole isn't copyrightable, but that single chord is not copyrightable. It's not protectable. Suppose the chord was played by, let's say it were a violin chord played by Itzhak Perlman, and he plays that chord better than anybody else. What's the answer there? Is your question, Your Honor, whether the de minimis inquiry would apply to that or whether that would be considered original? They can get Itzhak Perlman for free in their recording. Your Honor, perhaps not. And I think that's a different question. And I think it would depend again on how long is the recording and how distinctive is that recording. And would an audience be able to say, oh, I recognize that that's a Itzhak Perlman violin performance. But here, first of all, the sound recording snippet is so short you can barely even pick it out, let alone identify that, oh, yes, that's played by the South Soul Orchestra and that sounds unique to me. And that's part of the de minimis analysis as a whole, because you look at the quantitative and the qualitative significance of the sound recording that was sampled to the plaintiff's work as a whole. Well, we're talking about this fraction of a second long sound recording snippet of a song that's almost eight minutes long, and we're at somewhere around one sixteen hundredth of the song that was taken. And so I would submit to you that nobody would recognize that. Is there any place where that chord is played alone? I'm not the best listener in the world, but it sounded to me that there was always an overlay of many other instruments and or voices at the same time as that chord. Is that right or wrong? The plaintiff's allegation here, Your Honor, was that the horn sound was relatively isolated at that three minute and thirty five second point in Love Break, and they say that's why the sample must have been taken from there. I don't know if it was completely standing alone, but that is their argument. Otherwise, the horn. But in Vogue, though, it's not recognizable solo. Is that true or not? Your Honor, the horn chord is covered by lots of other music in Vogue, and in fact, Your Honor, that raises a very important point. The first time I had heard Vogue, I couldn't even hear the horn hits, and they allege that there's a horn hit in five or six different places in the recording. But what they alleged in their complaint, and this is very important to the de minimis analysis, Your Honor, they said that the mechanical instruments, which we later determined was waveform analysis, this is looking at the sound waves on the computer, but that it was not detectable by the human ear, and that's why they only brought their claim about twenty years after Vogue had been released. That's an admission that it's not recognizable, and that is the test, that if you're listening to Vogue and you hear that horn hit, would you be able to Were this case to go to trial, would it be a jury trial or a non-jury trial? I'm not certain if they made a jury demand. My guess would be they would. It could be a jury trial. It could be a jury trial. Because I was, you know, the judge made the determination, and this goes back actually to questions that both Judge Graber and Judge Silverman asked, which were excellent is it de minimis, isn't it de minimis, and the judge makes a decision, the district judge makes a decision as a matter of law. One wonders if you have a Stan Getz or an E. Jack Perlman or someone of that kind, and you suggested even yourself in your response to Judge Silverman, well, maybe that might make a difference. Is that a jury question? Your Honor, it could be a jury question in certain cases. It is not here. The Newton case in the Ninth Circuit was on summary judgment, and the court there, this court, said that we can make the determination, the district court can listen to the two works and find that the taking was only de minimis, and that's been done in many courts. We've seen that. The cases are cited in our brief. I do want to reserve time for my colleague to argue the attorneys' fees appeal, but in many circumstances, the court itself, upon listening to the music and taking the expert opinions into account, crediting what the plaintiff's expert has to say, can conclude as a matter of law that the taking is de minimis. Unless Your Honors have any further questions on the summary judgment ruling, I'd like to turn it over to my colleague. Thank you very much, Mr. Kapp. Thank you. Good morning. Richard Bush on behalf of Mr. Pettibone. Just one thing I do want to mention from the beginning is that Bridgeport, specifically in its decision, stated that its only applicability is where sampling is admitted. That was one of the statements the court made. That is a predicate for the Bridgeport case to be applied. Your Honors, I'm representing Mr. Pettibone in this case, and I'm addressing Judge McConnell's award of fees. What's not at issue in this case is the reasonableness of the fees awarded. Mr. Besser and Salasol have not challenged those, and in fact, the district court went through meticulously and carved out fees. No, they don't say you didn't do $600 and some-odd thousand dollars worth of work. They say you shouldn't get anything. Exactly. Right. They don't challenge the reasonableness of the fees. Understood. Whether the fees should have been awarded. Well, you have a situation here where there's no, admittedly, there's a Ninth Circuit case which you argue, you don't argue, your colleague argues, is controlling, but it isn't really on all fours for sure. We have no Supreme Court case that we can point to. There are district court cases. Most of them actually support your position, but there are a few that don't. And then you have a Sixth Circuit case that doesn't support your position, at least in part. So how is this so crystal clear that any reasonable lawyer would not have filed the suit? For several reasons. Number one, as I mentioned before, Bridgeport in and of For purposes of summary judgment, it's assumed in this case, isn't it? No, it is not assumed. In fact, the testimony was that the waveform analysis was inconclusive. And so it was not assumed that sampling occurred for purposes of summary judgment because they did not submit evidence to suggest that it absolutely was. Well, speaking only for myself, I find it very difficult to say that it's objectively unreasonable to file a lawsuit when you have a case that is 99 percent on point from another circuit about sound recordings and nothing from this circuit directly about sound recordings, and relying on it. I just don't understand that. Here's the reason why, Your Honor, and there are multiple reasons, and I have a limited amount of time, but there are absolutely multiple reasons. Number one, they should have known that a single cord was not copyrightable, original, and was de minimis. Number two, since Bridgeport, not only NMR, but every court that's considered it has criticized it and rejected it. Number three, in this court, the case cited by my colleague, Mr. Kaplan, was rejected or set forth the principles for analyzing the de minimis of a sampling claim. Let me ask you about the criticism by other courts. I notice you're from Nashville, aren't you? Yes. And that's in the Sixth Circuit. And, in fact, as Mr. Besser will probably tell you, I was the lawyer who represented Bridgeport in the Bridgeport case. So I can tell you the Sixth Circuit. But also in the Sixth Circuit is Motown, too, right? That's in Detroit, yes. And that's in the Sixth Circuit. Correct. And this Bridgeport case has been on the books for, what, about 11 years in a big music area? And it has never been followed by any court that I can think of. It's followed in the Sixth Circuit. It's followed in the Sixth Circuit, but it has never been... I don't know where all those music companies are. Well, Motown, of course, Motown is now owned by Universal, and Universal is in the Ninth Circuit. You want to quibble where Motown is, but... Talk to Barry Gordy, see what he says. It's another case. There are other facts, Your Honor, that are very important that I just want to very quickly address on the objective unreasonableness. The principle of the plaintiff in this case actually was an engineer on Vogue. He himself was the person who worked on the post-production remixes and who, in fact, inserted into Vogue samples that he then sued upon. In other words, the plaintiff in this case worked on Vogue, was an engineer, worked on post-production remixes, and he, in fact, was the one who put into post-production remixes of Vogue things he claimed were then sampled when he purchased the Sal Sol catalog later. So, in other words, he himself has incredibly unclean hands here and was responsible for things that he then alleged constituted copyright infringement in this very case. Okay. I see you're out of time, Mr. Bush. Thank you. Mr. Besser, you have almost three minutes left. Yes, Your Honor. Just to reply to that point, there was absolutely no proof of that. Mr. He's referring to Mr. Frasca, who was an officer of the company that ultimately bought these various catalogs, which included Vogue. He was he submitted the declaration. He was a very junior engineer at the time of the recording back in 1990 or whenever it was done. But, more importantly, the reason I urge this Court to adopt the Bridgeport case is that there has to be a line with sound recordings. If you can take a little bit but not too much, you get into a situation where you are taking the creative efforts of someone else. Counsel, what is your response to the argument that Bridgeport's only applicability is to admitted sampling and the sampling is denied here? I don't believe that's really what Bridgeport is limited to. Where you have a summary judgment where sampling is established as a matter of fact, to read Bridgeport to require an admission by the defendant that they sampled would so limit the applicability of Bridgeport as to be meaningless. We had an eyewitness who said the sampling occurred. When counsel said we had no evidence of sampling, that's just simply incorrect. There was an eyewitness who was in the studio who watched the sampling take place. We have an expert who finally, after a huge struggle with the defendants, we got a hold of the actual multi-track recordings and we could pick out the exact sample that was taken from one of the tracks. So there's no question but that sampling occurred here. Certainly for purposes of summary judgment there was no question. Well, in Bridgeport, in terms of the fact, I don't know whether it will apply or it won't beyond that, but it does say because defendant does not deny it, we assume that the soundtrack used the samples. They didn't deny it in that case. Right. So all that did was relieve Mr. Bush from having to prove that the sampling took place when he was arguing the case because the defendant admitted that the sampling had occurred. In the typical case that doesn't happen. It's very unusual in a copyright infringement case that you have an eyewitness to the sampling, which we had here. So, you know, we have a very, very strong case that the sampling took place. We're entitled to proceed to trial and present it, certainly under Bridgeport. To limit Bridgeport to you have to get an admission out of the defendant would basically eliminate Bridgeport as a trial. Counsel wasn't sure, and I don't know that it makes any difference at all, but would this have been a jury trial? Yes. We asked for a jury trial. All right. Absolutely. Thank you very much, Judge Graber. I think I'm out of time. Judge Ezra. Mr. Kessler, thank you. Mr. Kaplan, Mr. Bush, thank you, gentlemen. The case just argued is submitted. Good morning.
judges: Silverman, Graber, Ezra